## IN THE UNITED STATES COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN S. TEWES | ) |
| 36 Mountain Laurel | ) |
| Chapel Hill, NC 27517 | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| JOHN M. McHUGH | ) |
| Secretary of the Army | ) |
| 1400 Defense Pentagon | ) |
| Washington, D.C.  20301 | ) |
| | ) |
| *Defendant.* | ) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

### (APA Review of the Army Board for Correction of Military Records)

### JURISDICTION AND VENUE

1.     This action seeks review of a decision of the Army Board for Correction of

Military Records (ABCMR), dated April 25, 2012, denying an application by Plaintiff to have

his military records corrected.  The ABCMR's decision is a final agency decision under the

Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.  See also* 32 C.F.R. §

581.3(g)(2)(i)(A), "an ABCMR decision is final when it denies any application."

2.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331.  Plaintiff raises claims under the United States Constitution, federal statutes and

regulations, Department of Defense (DoD) and Department of the Army (DA) Regulations, DoD

Directives and Instructions, DA Directives, and procedures established and published by the

Army Review Boards Agency.

3.      The Acts of Congress upon which federal question jurisdiction rests are 10 U.S.C.

§ 1552, *et seq.*, which provides for a service member to apply to the ABCMR to correct errors

and injustices, and the APA, 5 U.S.C. § 701 *et seq.*, which enables a federal court to review and

reverse a decision of a Board for Correction of Military Records that is arbitrary, capricious,

unsupported by evidence or otherwise contrary to law.  5 U.S.C. § 706.

4.      This Court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 702.

5.      Venue lies pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1402(a)(2).


## PARTIES

6.      Plaintiff, Kevin S. Tewes, is a United States citizen and former active duty United

States Army Captain who now resides in Chapel Hill, North Carolina.

7.      Defendant, the Honorable John McHugh, is the Secretary of the Army and is the

named Defendant in his official capacity as the head of the Department of the Army, pursuant to

10 U.S.C. § 3013.  Because he is the officer with final authority for correction of records within

the Department of the Army, he is the proper Defendant for a cause of action under the APA.

DoD Directive 1332.41, March 8, 2004, Certified Current as of April 23, 2007, Paragraph 4.2.


## STATUTE OF LIMITATIONS AND
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      Plaintiff was honorably discharged from the United States Army on March 15,

2008.

9.      On August 29, 2011 Plaintiff submitted an application to the ABCMR for the

correction of military records relating to errors and injustices resulting from the Army's failure to

perform a thorough medical evaluation of his respiratory problems during Plaintiff's military

separation medical examination.

10.     On April 25, 2012 the ABCMR issued a final decision denying Plaintiff's application.

11.     Plaintiff has exhausted all administrative remedies available to him.

12.     Pursuant to 28 U.S.C. § 2401(a), this type of claim must be filed within six years after the claim first accrues.

13.     Plaintiff's claims accrued on April 25, 2012, the date when the ABCMR issued a final decision denying Plaintiff's application.

14.     As this Complaint is filed within six years of the date of the ABCMR decision, this action is timely.  *Lebrun v. England*, 212 F. Supp. 2d 5, 11 (D.D.C. 2002) ("[T]he right to obtain judicial review of a Board of Corrections' decision under the APA . . . accrues at the time of the final agency decision . . . rather than at the time when the underlying discharge . . . occurred.")

**FACTS**

15.     On August 29, 2011 Plaintiff submitted an application to the ABCMR to correct his military records.  In a letter dated September 7, 2011, the ABCMR acknowledged receipt of Plaintiff's claim, and assigned the following case number to it: AR20110017441.  On April 25, 2012 the ABCMR issued a final decision denying Plaintiff's application.  This action arises because the ABCMR, acting for the Defendant pursuant to 32 C.F.R. § 581.3(g)(2)(i), has failed to correct errors and remove injustices that followed from the Department of the Army's failure to comply with applicable statutes and regulations in its dealings with Plaintiff.

**Plaintiff's Military Career/Exposure to Toxic Smoke/Discharge**

16.     Plaintiff entered the United States Army on September 7, 2003.  Plaintiff was in

3

excellent physical health at this time, as evidenced by his entrance physicals.  An outstanding

runner, he consistently achieved the maximum score on the Army Physical Fitness Test (APFT).

17.     Plaintiff deployed to Iraq in October 2006, where multiple exposures to harmful

smoke led to significant chronic respiratory issues.  While serving with his unit on Forward

Operating Base (FOB) Loyalty in late 2006, Plaintiff suffered inhalation injuries after being

exposed to smoke from a large fire.  In January 2007, following this exposure, Plaintiff was

diagnosed with "reactive airway disease" by a military pulmonologist at the Baghdad Combat

Support Hospital in Baghdad, Iraq.  Approximately ten months later, in October 2007, a smoke

grenade discharged in Plaintiff's HMMWV during a mission in Baghdad, causing thick smoke to

fill the cabin of his vehicle.  Because of the extreme danger in the area, Plaintiff's convoy did not

stop, and the doors to his vehicle remained closed.  As a result, Plaintiff was forced to breathe

heavily polluted air for approximately twenty minutes.

18.     Plaintiff suffered significant respiratory problems following each of the events

described in the preceding paragraph.  Following the October 2007 smoke grenade incident,

Plaintiff's respiratory problems were so severe that he could not perform his duties for several

days.  In addition, following the smoke grenade incident, Plaintiff was unable to complete

another APFT for the remainder of his military career.  In July 2007, in between the two events

described above, Plaintiff received a thorough evaluation of his respiratory problems by a

military pulmonologist at Landstuhl Regional Medical Center.  After receiving normal results

from a Methacholine Challenge breathing test (an objective breathing study that tests for asthma

and other chronic respiratory conditions), the pulmonologist diagnosed Plaintiff with "dyspnea"

and advised him to avoid "smog/air pollution as much as possible."  The July 2007 evaluation

was the last respiratory testing and consultation with a pulmonologist that Plaintiff received

while on active duty, in spite of the fact that Plaintiff suffered a subsequent serious smoke

inhalation event in October 2007 which caused him to experience significantly increased

breathing problems.

19.      Plaintiff returned to the United States in December 2007 and began the process

of separating from the Army.  In the weeks following his return from Iraq, Plaintiff informed

military health care providers of his respiratory problems on several occasions, both verbally and

in writing.  In spite of being notified about Plaintiff's inability to complete another Army

Physical Fitness Test, and in spite of being notified about Plaintiff's inability to adequately

perform his duties for a period of time following the smoke grenade incident, military health care

providers did not conduct any testing of Plaintiff's respiratory condition during his separation

medical examination in January 2008.  Instead, the military separation examiner improperly

relied on the results of the July 2007 breathing studies to substantiate an erroneous conclusion

that Plaintiff did not have any serious respiratory illness.

**Post-Discharge Testing and Diagnosis**

20.      Following the smoke grenade incident, Plaintiff's respiratory problems forced him

to stop engaging in cardiovascular exercise for the remainder of his deployment to Iraq.  Plaintiff

did not attempt to start running again until approximately a month after his separation medical

examination.  Each time he attempted to run, Plaintiff experienced significant chest pain and

tightness.  In the weeks prior to his discharge from the Army, Plaintiff sought care for this issue

at Walter Reed Army Medical Center, but the military did not conduct any respiratory testing or

pulmonary evaluation.  However, following his discharge from the Army, the VA referred

Plaintiff for a pulmonary consultation.  During that consultation, which occurred on December

11, 2008, Plaintiff was diagnosed with bronchial asthma by a VA pulmonologist.

21.      Over the next year, Plaintiff underwent significant testing and evaluation in order

to ascertain the seriousness of his respiratory condition.  In 2009, he began treatment with a

physician in private practice who recommended another Methacholine Challenge breathing test.
Due to the backlog of patients at the Washington, DC VA Medical Center, Plaintiff was unable
to take this test until September 2009.  When the test was administered, it revealed that Plaintiff
had severe asthma.  A month after this test, Plaintiff underwent a surgical procedure at the VA to
determine the extent of physiological damage to his lungs and airway.  This surgery revealed
several areas of inflammation in Plaintiff's lungs.  In addition, a bronchial biopsy taken during
the surgery revealed that the cilia in Plaintiff's lungs had been destroyed.

22.     As a result of this testing and evaluation, Plaintiff was prescribed daily high-dose
oral corticosteroids to control the inflammation in his lungs.  In addition, the severe and chronic
nature of Plaintiff's respiratory disease required him to move to an area with better air quality.

**Application to the Army Board for Correction of Military Records (ABCMR)**

23.     On August 29, 2011, Plaintiff submitted an application to the ABCMR for
correction of his military records, requesting that the ABCMR change his status to "retirement
by reason of permanent physical disability due to a combat-related disability", and place him on
the Permanent Disability Retired List (PDRL) (*See* 10 U.S.C. § 1201, *et seq*. and 10 U.S.C. §
1413a, *et seq*.).

24.     In his application to the ABCMR, Plaintiff provided a nine-page statement
describing his case in detail.  In this statement, Plaintiff raised several legal arguments in support
of his application, the most important of which centered on Chapter 2-8*a* of Army Regulation
635-40.  In support of his arguments, Plaintiff provided the ABCMR with a three-ring binder that
included thirty-one tabs of supporting evidence.  This evidence included relevant military
medical records, a copy of Chapter 2-8*a* of Army Regulation 635-40, and proof of the exposures
that caused Plaintiff's respiratory problems.  Plaintiff highlighted key language in these
documents in yellow, and discussed the importance of the highlighted evidence in his nine-page

statement.

25.     Among the evidence that Plaintiff included in his claim to the ABCMR was the signed DD Form 2697 ("Report of Medical Assessment") from his separation medical examination.  This form states that Medical Services must "provide a comprehensive medical assessment for active and reserve component service members separating . . . from active duty." On his DD Form 2697, Plaintiff wrote that he was experiencing "respiratory problems" that had worsened since his last physical examination.  Plaintiff also noted that, since his last physical examination, he had developed "respiratory issues" that caused him to miss duty for longer than three days.  In spite of notifying the Army separation medical examiner of these respiratory problems on the DD Form 2697, and in spite of the fact that Plaintiff also verbally described the October 2007 smoke grenade incident to the separation medical examiner, no new respiratory tests were conducted.  Military medical records in Tab 17 of Plaintiff's application to the ABCMR clearly showed that the separation medical examiner improperly relied on the results of the Methacholine Challenge breathing test that had been conducted in July 2007 to erroneously conclude that Plaintiff did not have a serious respiratory disease.

26.     In Plaintiff's written statement to the ABCMR, Plaintiff asserted that if his respiratory problems had been evaluated by the standards established by Army Regulation 635-40 and other controlling regulations, he would have been found medically unfit for duty due to severe asthma.  Specifically, Plaintiff cited Chapter 2-8*a* of Army Regulation 635-40, which dictates that a "thorough" medical evaluation must be conducted "when a Soldier's medical condition becomes questionable in respect to physical ability to perform duty."  In his written application to the ABCMR, Plaintiff explained that his inability to complete an Army Physical Fitness Test, along with his inability to work for four consecutive days due to his respiratory distress following the smoke grenade incident, were facts that imposed a binding legal

7

requirement on the Army to conduct a "thorough" evaluation of his respiratory condition prior to his discharge.

27.     The medical evidence provided by Plaintiff in his application to the ABCMR clearly showed that the Army failed to conduct a thorough separation medical examination as required by law.  In his application to the ABCMR, Plaintiff provided medical evidence from post-separation respiratory testing which indicated that, if the Army had evaluated Plaintiff for his respiratory complaints in accordance with legal requirements, his severe asthma would have been diagnosed at the time of his separation medical examination.  Plaintiff asserted that this diagnosis would have triggered review by a Medical Evaluation Board (MEB) and a Physical Examination Board (PEB), where Plaintiff would have been found medically unfit for duty. This, in turn, would have led to a medical retirement under 10 USC § 1201 *et seq.* and Plaintiff's inclusion on the PDRL.

**The ABCMR's Violation of Army Review Boards Agency Published Procedures**

28.     The Army Review Boards Agency (ARBA) publishes procedures for the ABCMR on its official website.  http://arba.army.pentagon.mil/abcmr-overview.cfm (this website provides information about the application process, as well as a link to Army Regulation 15-185, which governs the ABCMR).  The information on this website is specifically designed to inform applicants of the process and procedures that will be used by the ABCMR when adjudicating applications.  The "Overview" section on this website reads, in relevant part: "When necessary, advisory opinions are obtained from other Army staff elements.  If an advisory opinion is obtained, it will be referred to the applicant for comment before the application is further considered."  *Id.*  This procedural rule is further clarified in an "ABCMR Applications Guide" that appears as a link on the ARBA website.  This guide states, in relevant part: "If the ABCMR obtains an advisory opinion about your case, you will be sent a copy.  You will have 30

days to provide your comments back to the ABCMR before the ABCMR considers your case."
*See* Army Review Boards Agency, Applicant's Guide to Applying to the Army Board for
Correction of Military Records (ABCMR) paragraph 12 (2005).

29.     In a written response to a June 8, 2012 Freedom of Information Act (FOIA)
request from Plaintiff's legal counsel, the FOIA Program Chief for the Department of the
Army's Office of the Administrative Assistant to the Secretary informed counsel for Plaintiff
that the ABCMR obtained a "legal opinion on the proposed denial of relief" on Plaintiff's claim,
which it described as a "legal advisement memorandum from an ABCMR attorney."  This
document was never provided to Plaintiff.

30.     Prior to submitting his application to the ABCMR, Plaintiff read the Army
Review Boards Agency's "ABCMR Applications Guide" and deliberately circumscribed the
legal arguments that he made in his application under the belief that he would be afforded the
opportunity to present additional legal argument if an adverse legal advisory opinion was issued
in his case.  Given Plaintiff's detrimental reliance on the Army Review Boards Agency's
published procedures, the ABCMR's failure to provide Plaintiff with a copy of the legal advisory
opinion constitutes a violation of Plaintiff's Due Process rights.  *See, e.g.*, *Camero v. United
States*, 179 Ct. Cl. 520, 781 (1967).  As pointed out in a part-concurring, part-dissenting opinion
in *Vitarelli v. Seaton*, 359 U.S. 535, 546–47 (1959):

> An executive agency must be rigorously held to the standards by which it
> professes its action to be judged. *See Securities & Exchange Comm'n v. Chenery
> Corp*, 318 U.S. 80, 87-88 [(1943)]. Accordingly, if dismissal from employment is
> based on a defined procedure, even though generous beyond the requirements that
> bind such agency, that procedure must be scrupulously observed. *See Service v.
> Dulles*, 354 U.S. 363 [(1957)]. This judicially evolved rule of administrative law
> is now firmly established and, if I may add, rightly so. He that takes the
> procedural sword shall perish with that sword.

**The ABCMR's Violation of 10 U.S.C. § 1556**

9

31.     The ABCMR is prohibited from engaging in *ex parte* communications that have a material effect on an applicant's case, unless the communications are purely administrative in nature.  10 U.S.C. § 1556(a),(b).  By failing to provide Plaintiff with a copy of the "legal advisement memorandum" described above, the ABCMR engaged in prohibited *ex parte* communications when deciding Plaintiff's application.

**The ABCMR's Arbitrary and Capricious Ruling on Plaintiff's Claim**

32.     On April 25, 2012 Plaintiff was informed by letter that the ABCMR had denied his application.  In its "Record of Proceedings", dated April 24, 2012, the ABCMR stated that Plaintiff had presented insufficient relevant evidence to demonstrate the existence of error or injustice.  In reaching this conclusion, the ABCMR noted that it could not locate the "report of medical examination" from the separation exam, and suggested that the absence of this piece of evidence was a fact that was important to deciding the case against Plaintiff.  However, in plain violation of 32 CFR 581.3(b)(5)(iii), the ABCMR did not request this document or any other information from Plaintiff.  Instead, after suggesting that the absence of the "report of medical examination" provided a basis upon which to deny Plaintiff's claim, the ABCMR then stated that the "evidence of record and independent evidence submitted by the applicant was more than sufficient to serve the interests of justice in this case"—language that the ABCMR used to justify its denial of Plaintiff's request for a personal hearing.

33.     After failing to request additional information from Plaintiff as required by law, and after refusing to provide Plaintiff with a hearing (using reasoning that contradicted the ABCMR's earlier analysis of the evidence), the ABCMR then failed to discuss one of the most important pieces of evidence in Plaintiff's application: the separation medical examiner's handwritten comments from Plaintiff's separation examination, which appear in Section II of the DD Form 2697 that Plaintiff provided in Tab 17 of his application.  This document clearly shows

that the separation examiner's evaluation of Plaintiff's respiratory problems consisted solely of a review of the July 2007 breathing testing that had been conducted prior to the smoke grenade incident.

34.     In its written ruling, the ABCMR also failed to discuss most of the other key documentary evidence that Plaintiff submitted in support of his application.  The following is a list of relevant evidence from Plaintiff's application which the ABCMR failed to discuss in any manner whatsoever in its written ruling (Plaintiff submitted this evidence to the ABCMR in a three-ring binder with thirty-one numbered tabs):

Tab 14 – Sworn statement of Colonel Roy House describing the incident in which a smoke grenade discharged inside of the HMMWV in which he and Plaintiff were riding;

Tab 15 – The language at the bottom of the first page of Plaintiff's final Officer Evaluation Report (OER), which notes that Plaintiff could not pass an Army Physical Fitness Test due to being placed on a physical "profile" shortly after the smoke grenade incident;

Tab 16 – Plaintiff's Post Deployment Health Assessment (PDHA) in which Plaintiff informed military medical personnel that he was suffering from a "chronic cough", "difficulty breathing", and "chest pain or pressure" upon his return from Iraq;

Tab 20 – Military medical records, dated March 12, 2008 (prior to Plaintiff's discharge), showing that Plaintiff complained to military medical providers about chest pressure and tightness;

Tab 21 - Military medical records, dated July 30, 2008, showing that Plaintiff again complained to military medical providers about his ongoing respiratory issues in the months immediately following his discharge;

Tab 23 – VA medical records, dated November 24, 2008, showing that Plaintiff complained to VA medical providers about his ongoing respiratory issues;

Tab 24 - VA medical records, dated December 11, 2008, showing Plaintiff's diagnosis of "bronchial asthma" during his first visit with a pulmonologist following the smoke grenade incident;

Tab 25 - Results of a Methacholine Challenge breathing test, dated September 10, 2009, which stated that Plaintiff suffers from "significant bronchial hyperreactivity";

Tab 26 – Letter from physician explaining the results of the September 2009 Methacholine Challenge breathing test and summarizing the severity of Plaintiff's respiratory problems;

Tab 27 – "Operation Report" from a bronchial biopsy procedure at the Washington, DC VA Medical Center, showing findings of inflammation in Plaintiff's "upper airway and lower airway, including the tracheobronchial tree";

Tab 28 – Pathology results from the bronchial biopsy procedure, showing destruction of ciliated cells in Plaintiff's bronchi;

Tab 29 – Letter from physician explaining the results of the pathology report and summarizing the severity of Plaintiff's respiratory problems;

Tab 30 – Memorandum from Plaintiff's employer acknowledging that Plaintiff's respiratory problems are so severe that he was required to relocate away from his job to an area with less air pollution;

Tab 31 – VA Rating Decision, issued after the testing at the Washington, DC VA Medical Center;

Supplemental evidence submitted by Plaintiff on December 1, 2011 – This supplemental evidence consisted of several case studies from peer-reviewed medical journals

12

describing the dire health outcomes of people who, like Plaintiff, had inhaled dense

fumes from a smoke grenade that discharged in an enclosed area.

35.    In addition to completely ignoring almost all of the relevant evidence that Plaintiff

submitted in support of his application, the ABCMR's written ruling completely disregarded the

main allegation of injustice that Plaintiff made in his application.  The ABCMR's written

decision focuses on the question of whether Plaintiff submitted sufficient evidence to show that

he was, in fact, unfit to perform his duties prior to his discharge.  This question has absolutely no

relevance to the central allegation of injustice that Plaintiff raised in his application under

Chapter 2-8*a* of Army Regulation 635-40.  Under Chapter 2-8*a* of Army Regulation 635-40, the

relevant inquiry is *not* whether the evidence of record shows that Plaintiff was in fact unfit to

perform his duties; the relevant inquiry is whether the evidence of record is enough to show that

Plaintiff's fitness to perform his duties had become "questionable" prior to his discharge.  Once

Plaintiff's fitness to perform his duties becomes "questionable", Chapter 2-8*a* places the burden

on the Army to conduct a "thorough" evaluation to determine if, in fact, Plaintiff has a condition

that renders him unfit to perform his duties.

36.    The evidence Plaintiff submitted in his application clearly shows that, at the time

of his separation medical examination, the Army was in possession of a litany of evidence that

showed that Plaintiff's respiratory problems had worsened to the point of making it

"questionable" whether Plaintiff was fit to perform his duties, thereby triggering the requirement

that Plaintiff be given a "thorough" evaluation to determine the true severity of his respiratory

condition.  The ABCMR's written ruling does not consider *any* of the evidence submitted by

Plaintiff in the context of the arguments that Plaintiff raised under Chapter 2-8*a* of Army

Regulation 635-40.

37.    Finally, in its written decision, the ABCMR indicated that it did not have the

authority to grant the requested relief without a review by a PEB.  In so doing, the ABCMR

appeared to disregard its broad authority under 10 U.S.C. § 1552 and Army Regulation 15-185 to

change any military record of the Department of the Army necessary to rectify an error or

injustice.  Plaintiff argued that the injustice in his case consisted of the Army failing to

thoroughly evaluate his respiratory condition at the time of his separation medical examination.

Such a failure would have prevented Plaintiff from ever having the opportunity to have his

respiratory condition reviewed by a PEB.  In other words, the ABCMR's decision relies on the

Army's violation of Chapter 2-8*a* of Army Regulation 635-40 (the very injustice that Plaintiff

sought to have remedied) to conclude that it cannot grant Plaintiff's application.  The ABCMR's

position on this issue is plainly at odds with the authority that is given to the ABCMR by 10

U.S.C. § 1552 and Army Regulation 15-185.

## STATUTORY AND REGULATORY FRAMEWORK

38.     10 U.S.C. § 1552 provides for the correction of errors or removal of injustices in

the records of a current or former member of the military.  Upon timely application and

consideration, the statute provides:

> The Secretary of a military department may correct any military record . . . when
> the Secretary considers it necessary to correct an error or remove an injustice.
> Except as provided in paragraph (2), such corrections shall be made by the
> Secretary acting through boards of civilians of the executive part of the military
> department.

10 U.S.C. § 1552(a)(1).

39.     The ABCMR is established by the Secretary of the Army, and consists of

Department of the Army civilians who are appointed by the Secretary of the Army.  Three

members constitute a quorum.  32 C.F.R. § 581.3(c)(1).  The ABCMR is charged with the

responsibility of reviewing all matters that are properly before it to determine the existence of

error or injustice.  32 C.F.R. § 581.3(c)(2)(i).

40.     The ABCMR has significant power to grant relief, and may, for example, order

reinstatement and back pay.  *See, e.g., Chappell v. Wallace*, 462 U.S. 296, 303 (1983) (Board is

empowered under 10 U.S.C. § 1552 to order retroactive pay and promotion); 10 U.S.C. § 1552

(the Secretary of the Army, acting through a Board of Corrections, is empowered to pay claims

for lost pay, allowances, and other compensation as the result of a record correction.)

41.     The ABCMR has "an abiding moral sanction to determine, insofar as possible, the

true nature of an alleged injustice and to take steps to grant thorough and fitting relief."  *Yee v.*

*United States*, 512 F.2d 1383, 1387–88 (Ct. Cl. 1975).

42.     A Board for Corrections of Military Records acts in an arbitrary and capricious

manner under the Administrative Procedure Act (5 U.S.C. §701, *et seq*.) when either of the

following occurs: (1) the Board fails to consider in its written ruling any non-frivolous argument

raised by an applicant which may have affected the ultimate disposition of the application, or (2)

the Board fails to show in its written ruling that it has considered *all* of the evidence before it,

which requires the Board to explain why evidence that is contrary to its ultimate ruling was

disregarded or given lesser weight.  *See, e.g., Mudd v. Caldera*, 26 F. Supp. 2d 113, 120 (D.D.C.

1988); *Mozur v. Orr*, 600 F. Supp. 772, 782 (1985); *Beckham v. United States*, 392 F. 2d 619,

622 (1968); *Smith v. Dalton*, 927 F. Supp. 1, 5 (D.D.C. 1996); *Fuller v. Winter*, 538 F. Supp. 2d

179, 192 (2008); *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 53 (2005); *Frizelle v. Slater*, 111

F.3d 172, 324 U.S. App. DC. 130 (1997).

## LEGAL CLAIMS

### Count I

**The ABCMR's decision was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law.**

43.     The allegations of the preceding paragraphs are incorporated by reference as if

fully set forth herein.

44.     The ABCMR's decision is unsupported by the evidence.  The evidence submitted by Plaintiff in his application to the ABCMR clearly shows that Plaintiff's severe asthma and reactive airway disease were the result of smoke inhalation from combat-related exposures that Plaintiff suffered in Iraq while serving on active duty in the United States Army.  The evidence submitted by Plaintiff in his application to the ABCMR also clearly shows that Plaintiff suffered from a respiratory problem at the time of his separation medical examination that made it at least "questionable" whether Plaintiff was medically fit for duty prior to his discharge.  As such, the evidence shows that Plaintiff should have received a "thorough" evaluation of his respiratory problems as part of Plaintiff's Army separation medical examination.  The evidence submitted by Plaintiff in his claim to the ABCMR further shows that, in violation of Chapter 2-8*a* of Army Regulation 635-40, the Army did not, at any time, conduct a "thorough" evaluation of Plaintiff's respiratory problems following Plaintiff's exposure to dense fumes from a smoke grenade that discharged inside his HMMWV in Iraq in October 2007.  In addition, the evidence that resulted from medical testing at the VA clearly establishes that, had the Army conducted a thorough evaluation of Plaintiff's respiratory problems as required by law, Plaintiff would have been found medically unfit for duty and thus eligible for medical retirement and addition to the PDRL.

45.     The ABCMR's decision is contrary to law.  The ABCMR, by not considering in its written ruling *all* of the relevant evidence and non-frivolous argument that Plaintiff submitted in support of his application to the ABCMR, acted in an arbitrary and capricious manner under the APA.  In addition, the ABCMR violated the requirements of 32 CFR 581.3 by failing to ask Plaintiff for a copy of the "report of medical examination" from his separation exam.

46.     The ABCMR's decision is arbitrary and capricious, not based on substantial evidence, a result of material error of fact or material administrative error, and otherwise

contrary to the law because the ABCMR considered an *ex parte* communication in rendering its decision, which was impermissible under 10 U.S.C. § 1556 because the ABCMR's consideration of the communication had a material effect on the Board's decision, and the communication was not administrative in nature.

47.     The ABCMR violated a firmly established judicially evolved rule of administrative law by failing to follow its own published procedural rules when adjudicating Plaintiff's application.  These procedural rules required the ABCMR to provide Plaintiff with a copy of the advisory opinion that was obtained in his case. These procedures also required the ABCMR to afford Plaintiff the opportunity to respond to the advisory opinion before adjudicating his claim.  The ABCMR's failure to follow its own published procedures in this regard violated Plaintiff's Due Process rights.

48.     The ABCMR, by refusing to provide full and complete relief to Plaintiff, violated Plaintiff's right pursuant to 10 U.S.C. § 1552 to have his military records corrected to adequately and fully correct an error or remove an injustice.  Specifically, by failing to change Plaintiff's status to retired by reason of permanent physical disability, by failing to place Plaintiff on the Permanent Disability Retired List, and by failing to attribute Plaintiff's respiratory ailments to combat-related causes, the decision of the ABCMR unlawfully withheld relief to which Plaintiff was legally entitled.  The ABCMR decision is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law, all within the authority of this reviewing Court to remedy under the APA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

A)  Hold unlawful and set aside the ABCMR's April 2012 decision;

B) Enter judgment in favor of Plaintiff on all counts;

C) Remand the case back to the ABCMR for further action consistent with the Court's findings, decision, and order;

D) Award Plaintiff attorneys' fees in accordance with the Equal Access to Justice Act (5 U.S.C. § 504; 28 U.S.C. § 2412); and

E) Award such other relief as the court deems appropriate.

Dated this December 5, 2012.

Respectfully submitted,

*/s/ David P. Sheldon*
David P. Sheldon (DC Bar # 446039)
Law Offices of David P. Sheldon, P.L.L.C.
512 8th Street, S.E.
Washington, D.C.  20003
Tel: 202.546.9575
Fax: 202.546.0135

Attorney for Plaintiff